**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: Mary Nampiaparampil and Devi Nampiaparampil MDL No. 3146

**STATUS UPDATE AND NOTICE OF RELATED PROCEEDINGS**

November 15, 2026

Dear Members of the Panel:

I am a non-attorney Plaintiff in this matter respectfully submitting this Notice to report developments in the related proceedings and to identify potential additional plaintiffs for consideration in a future renewed motion for coordinated or consolidated pretrial proceedings. My co-Plaintiffs and I are not asking the Panel to take any action at this time.

**Overview of the Submission**

Exhibit A to this Notice is a submission prepared on November 14, 2026 for *Nampiaparampil v. New York City Campaign Finance Board*, No. 26-cv-01745 (JAV), including its internal Exhibits A–C. It documents four continuing practices challenged in the action before Judge Vargas, which include 1) restrictions on personal spending for legal assistance, 2) financial-disclosure demands concerning the defunct 2021 campaign, 3) auditing and classification of legal services as campaign activity, and 4) restrictions on unpaid professional assistance. It juxtaposes the City's representation that the campaign audit concluded with current CFB portal instructions directing further disclosures, including future filing dates through 2032.

The submission also reports vacatur and reinstatement of Plaintiffs' previously dismissed state appeal, Appeal No. 2025-04148; reproduces related federal rulings, hearing excerpts, and CFB public statements; and presents enforcement records involving specific challenger campaigns and officers. It describes continuing effects on the Nampiaparampil family, the medical practice and the campaign. Since the parties appeared before the Panel, the related actions have followed substantially different paths in pursuit of their common claims.

**Mary Joseph Nampiaparampil:**

Mary Joseph Nampiaparampil ("Mary Nam") served as the uncompensated/ volunteer campaign Treasurer. Judge DeArcy Hall, in the Eastern District of New York, dismissed her case with prejudice citing non-party privity with this pro se, the preclusion chain, and duplicative litigation doctrine. Aspects of the restrictions on Mary Nam's access to legal counsel—the "Lawyer Ban"--are pending review by the Second Circuit (26-1217). On September 16, 2026, after Plaintiffs' last update to the JPML, the Second Circuit Clerk granted Mary Nam's motion to publicly docket her June and July Motions.

**Xavier Joseph Nampiaparampil:**

Like Mary Nam, 87-year-old pro se plaintiff, Xavier Joseph Nampiaparampil ("XJN") also sought to provide volunteer assistance. In the Southern District of New York (SDNY), his First Amendment claim—against the "Volunteer Ban"-- has survived the Defendants' Motion to Dismiss and its Motion for Reconsideration. The case is in Discovery and Judge Oetken has ordered the parties to be trial-ready by April 9, 2027. See No. 25-cv-01346 (JPO), ECF Nos. 50, 60, 65; Exhibit A at 9–13.

**Devi Elizabeth Nampiaparampil:**

Also in the SDNY, this plaintiff, Devi Elizabeth Nampiaparampil ("Dr. Devi") had a First Amended Complaint (FAC) that requested an injunction on the Lawyer Ban. Plaintiff also filed a Motion to Compel an End to the Audit, fully briefed on January 29, 2025. The motion was terminated; the audit remains unresolved. Judge Ramos denied the Defendants' Motion to Dismiss the FAC as moot on April 29, 2026. However, the case did not proceed to Discovery. On February 3, 2025, before Oral Argument before this Panel, Plaintiff had filed a Supplemental Complaint alleging ongoing and escalating retaliation. On April 29, 2026, the Court directed a Second Amended Complaint to consolidate the issues presented. Plaintiff then amended as directed. The Defendants responded with a new Motion to Dismiss. Discovery remains stayed and the Lawyer Ban is still being zealously litigated. See No. 23-cv-06391 (ER), ECF No. 143 at 3.

MS. NAMPIAPARAMPIL: Sure, three weeks to respond is fine. I just wanted to clarify the information in the original, the first amended complaint, is different than the information in the supplemental complaint. So it's not --

THE COURT: So it's not a stand-alone complaint.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

Q4TGdevC

MS. NAMPIAPARAMPIL: Exactly. It's in addition to what was in the first amended complaint.

THE COURT: OK. So there's no one document with all of your allegations.

MS. NAMPIAPARAMPIL: Exactly.

THE COURT: Could I ask you to do that, to supply one comprehensive amended complaint?

MS. NAMPIAPARAMPIL: Sure, I can do that, but I didn't want to change the date of the original complaint, meaning if that changes statutes of limitations.

THE COURT: It doesn't change anything.

*Excerpt From April 29, 2026 Hearing Before Judge Ramos (1:23-cv-06391)*

**Mary Nam, XJN, Dr. Devi, Metropolis Pain Medicine PLLC and Dr. Devi For NYC:**
The Plaintiffs' joint case before Judge Vargas pertains to the denial-of-access to counsel in the Western District of North Carolina, during and after Oral Argument before this Panel. The Defendants' Motion to Dismiss has been fully briefed since February 12, 2026. Discovery is currently stayed.

The Defendants' have repeatedly used a preclusion chain against the Plaintiffs. Plaintiffs intend to disrupt and dismantle that chain. As of October 1, 2026, all of the state court cases now have active appeals.—except for the 11 administrative cases where Plaintiffs (then Defendants-Respondents) managed to prevail against the City of New York.

And plaintiff-appellant, pro se, having moved for an order directing Supreme Court to certify and transmit the record for purposes of this appeal, or, in the alternative, for leave to proceed by reproduced record without formal certification, and to vacate the dismissal of the appeal and for an extension of time to perfect same, or, in the alternative to stay the appeal,

Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

It is ordered that the motion is granted to the extent of vacating the dismissal of the appeal, reinstating the appeal, and extending the time to perfect same to the January 2027 Term of this Court, and otherwise, the motion is denied.

ENTERED: October 01, 2026

Susanna Molina Rojas
Clerk of the Court

*Excerpt From October 1, 2026 Order On Vacatur of Dismissed Appeal (2025-04148)*

Together, these cases leave overlapping questions about the CFB's treatment of legal and volunteer assistance. There is factual development in one action while related claims have been dismissed with prejudice, or remain at the pleading stage in others.

**Potential Additional Plaintiffs**

Exhibit A at 16–23 reproduces CFB enforcement records concerning Celia Devi Dosamantes and Dr. Robby Mahadeo, including unpaid legal-services balances, claimed legal-expense exemptions, the issuance of penalties, and continuing post-election obligations. Their experiences extend the factual record beyond my immediate family. Exhibit A also describes circumstances involving AT, identified by initials because she is 8 years old, whose potential claims concern alleged retaliation and related obstacles to obtaining legal assistance.

I am identifying these persons and potential related claims to provide a factual basis for a future centralization request. Any future motion would identify the federal actions then

pending, their common factual questions, and the need for coordinated pretrial proceedings. I am not raising any claims on others' behalf.

**Filing Access and Status of Exhibit A**

The SDNY has introduced a portal for pro se submissions in lieu of email submissions. I have been unable to complete the registration process for access to this portal. This may be because of the November 12, 2026 Microsoft outage affecting email, which the portal uses to provide access. (The SDNY has a Notice regarding the outage on its website). Exhibit A in this Notice to the Panel is the submission prepared for the Vargas action. Plaintiffs emailed it to the SDNY Pro Se Desk, as per the prior procedure, but have been unable to submit it to the SDNY portal. Plaintiffs intend to follow-up and file it in person. I respectfully request that this notice and its exhibits be docketed in MDL No. 3146 to update the record of related proceedings and potential additional plaintiffs.

Respectfully submitted,

Devi Nampiaparampil
Pro Se Plaintiff
111 John Street, Suite 2509
New York, NY 10038
(312) 523-5935
devichechi@gmail.com

Exhibit A: November 14, 2026 Submission, prepared for the Vargas action, including its internal Exhibits A–C

Cc:
Via ECF: Maxim Maiello*
Office of Corporation Counsel
100 Church Street
New York, NY 10007

Via Email serviceECF@law.nyc.gov

*Upon information and belief, the attorney-of-record, Maxim Maiello has left the Office of Corporation Counsel. No other attorney has filed a formal Notice of Appearance on this docket. Therefore, a copy of this Notice has been emailed to serviceECF@law.nyc.gov

Gmail **Devi Nampiaparampil <devichechi@gmail.com>**

---

## Proof of service receipt

1 message

---

**ServiceECF (Law)** <ServiceECF@law.nyc.gov> Sun, Nov 15, 2026 at 11:17 PM
To: Devi Nampiaparampil <devichechi@gmail.com>

This email confirms receipt of email and constitutes proof of service at the Office of the Corporation Counsel for the City of New York. Please retain it for your records. Please note that the Office of the Corporation Counsel has accepted service only for the City of New York and entities for which the Law Department is authorized to accept service, including the Mayor and City Agency Heads named in their official capacities. Service of process on any individually named parties has not been accepted.

Documents must be submitted as attachments; linked documents will not be accessed and will not be considered as proper service on the New York City Law Department. All documents submitted after 5:00PM will be considered served on the next business day.

Please be reminded that the Law Department Service Window remains open to accept service of papers on Tuesdays and Thursdays from 9:00 am until 5:00 pm.

Service of process on individuals should continue to proceed in a manner required by applicable law.

**This mailbox is only monitored for service. Please call (212) 356-1140** with any questions or concerns.

# JPML NOTICE OF RELATED PROCEEDINGS

# EXHIBIT A:

# SUBMISSION TO THE VARGAS DOCKET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
DEVI ELIZABETH NAMPIAPARAMPIL,
MARY JOSEPH NAMPIAPARAMPIL,
XAVIER JOSEPH NAMPIAPARAMPIL,
METROPOLIS PAIN MEDICINE, PLLC, AND
DR. DEVI FOR NYC
*Plaintiffs,*
–against–
THE NEW YORK CITY CAMPAIGN FINANCE BOARD, ET AL.
*Defendants*

**NOTICE OF RELATED PROCEEDINGS AND SUPPLEMENTAL AUTHORITY**

**26-cv-01745 (JAV)**

November 14, 2026

Dear Judge Vargas,

I am a non-attorney pro se Plaintiff in this action. I respectfully submit this notice concerning developments in related proceedings and the continuing effects of four related practices previously challenged here as unconstitutional and *ultra vires*. These developments bear on Plaintiffs' access to legal assistance, their ability to litigate the underlying matters, and their continuing need for the relief already requested. The family and medical-practice matters discussed below update issues previously presented to this Court.

First, the Defendant New York City Campaign Finance Board ("CFB") and co-Defendant City of New York (the "City") restrict personal spending for legal assistance claiming that the campaign is a matching-funds participant, although the campaign received no matching funds and Plaintiffs dispute valid and voluntary enrollment. Second, it continues to demand financial disclosures on all paid and in-kind activity pertaining to the defunct 2021 campaign for NYC Public Advocate. Third, it subjects legal activity to audit and reserves

authority to classify donated legal services as political contributions retroactively. Fourth, it restricts volunteers according to the identity of the speaker and the content of their assistance. Plaintiffs have challenged these practices as *ultra vires* conduct causing continuing constitutional injury.

**Status Update Re: First Unconstitutional Practice: Mandatory Speech Restriction**

The Defendants use *res judicata* as a defense in this case, relying on a preclusion chain that began in state court. Plaintiffs returned to state court to address the first unconstitutional practice that plaintiffs had to abide by matching-funds speech-limiting restrictions to run for office. In opposing Plaintiffs' application for vacatur in early 2025, the CFB characterized this Plaintiff and her medical practice and co-plaintiff, Metropolis Pain Medicine, PLLC, as "hoping to shock this docket back to life." See NYSCEF No. 163, *Nampiaparampil et al. v. New York City Campaign Finance Board*, Index No. 159019/2022.

> motion to vacate under CPLR 5015(a). Dkt 150–162. Rather than accept the final disposition in this case, Plaintiffs return to this Court with a motion to vacate, hoping to shock this docket back to life through unsupported allegations that Defendant engaged in fraud, misstatements, misconduct, and concealment of evidence—allegations that are untrue, untimely, and irrelevant to

*Excerpt from Defendants' Opposition to Vacatur (Doc #163) in 159019/2022 (Ramseur)*

On October 1, 2026, a five-Justice panel of the Appellate Division, First Department, vacated the dismissal of the appeal in that matter, reinstated the appeal, and extended the time to perfect to the January 2027 Term. *Nampiaparampil et al. v. New York City Campaign Finance Board*, Appeal No. 2025-04148 (Exhibit A). The panel included Justice Shlomo Hagler, who

presided over the original pre-election state court proceeding that forms part of the preclusion chain previously described to this Court.

Under 22 NYCRR § 1250.10(c), an application to restore an appeal requires, among other things, "sufficient facts to demonstrate a meritorious appeal or proceeding."

> It is ordered that the motion is granted to the extent of vacating the dismissal of the appeal, reinstating the appeal, and extending the time to perfect same to the January 2027 Term of this Court, and otherwise, the motion is denied.
>
> ENTERED: October 01, 2026
>
> Susanna Molina Rojas
> Clerk of the Court

*Nampiaparampil et al. v. New York City Campaign Finance Board*, Appeal No. 2025-04148

Every state court case in which pro se Plaintiffs brought claims now have live appeals. The eleven matters where Plaintiffs were pro se Defendants/ Respondents—where they prevailed in every single one-- remain final. Those were the cases where the New York City Department of Sanitation Enforcement Division prosecuted co-plaintiff (Plaintiff's mother), Mary Nampiaparampil ("Mary Nam"), and her co-plaintiff (the campaign), Dr. Devi For NYC.

At the March 27, 2025 Oral Argument before the Judicial Panel on Multidistrict Litigation (JPML) in MDL No. 3146, Corporation Counsel attorney Maxim Maiello explained that a different determination in an underlying state proceeding could affect the Southern District of New York's assessment of Plaintiff's retaliation claim.

MR. MAIELLO: So as of this week, they've resurrected -- the first case was a motion to vacate a 2018 decision or a 2018 case. That decision was used via res judicata in the three or four following actions.

So if that first decision in the New York county court is determined any differently than it was years ago, then the Southern District will take that into consideration in its assessment of that retaliation claim that's ongoing there.

*Excerpt from Oral Argument Before the JPML in MDL #3146 (March 27, 2025)*

**Status Update Re: Second Unconstitutional Practice: Ongoing Regulation of Speech**

The Defendants continue to audit Plaintiff, Mary Nam, and Dr. Devi For NYC. The campaign also continues to receive financial reporting instructions through the CFB's portal. As accessed on November 12, 2026, the portal identifies the current reporting period as July 12, 2026 through January 11, 2027, displays a countdown of 64 days until the next filing, and identifies January 15, 2027 as that filing's due date. It also displays future filing dates through January 15, 2032. These current portal displays concern Plaintiff's 2021 campaign and are relevant to her allegations of continuing regulatory burdens.







*CFB Portal View for "Dr. Devi For NYC" (Timestamped November 12, 2026 at 11:28AM)*

*Zoomed in:*




The portal continues to direct financial disclosures for the 2021 campaign despite Defendants' representation to Judge Ramos--who is adjudicating the claim about a retaliatory audit--that the campaign audit concluded without administrative penalties.

This juncture, the campaign finance board's audit of her campaign, has concluded. No administrative penalties were assessed against her campaign. It was closed. Initially, there was a thought that her campaign might be subject to financial penalties, but as I recall, I believe that the board closed out the audit process without any assessments against the plaintiff's campaign. And to put it in simple terms, essentially, the board no longer is involved with that campaign

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

*Excerpt from Hearing Before Judge Ramos in 1:23-cv-06391 (April 29, 2026)*

Plaintiff has previously described the post-election audit challenged in the Ramos action as beginning in October 2022, after she filed a September 2022 motion to convert the Hagler proceeding to electronic filing. A court-generated e-track alert identified her application to remove the attorney from that proceeding and continue the case against the CFB pro se. (This is separate from the initial audit, which Plaintiffs allege was conducted in real-time during the campaign).

At the April 29, 2026 hearing before Judge Ramos, Corporation Counsel attorney David Thayer stated that the campaign audit "has concluded," that "[n]o administrative penalties were assessed against her campaign," and that "essentially, the board no longer is involved with that campaign."

Nevertheless, on November 12, 2026, the CFB's portal continued to identify an upcoming disclosure obligation for the 2021 campaign and displayed additional filing dates through January 2032. The transcript and portal displays therefore raise a concrete question about which regulatory obligations ended and which remain in force.

That question directly concerns the claims before this Court. Plaintiffs continue to challenge the treatment of legal expenses and unpaid professional assistance as regulated campaign activity. A representation that the audit has ended does not resolve whether obtaining assistance with the ongoing litigation triggers further reporting, valuation, review, or potential penalties. The continuing portal instructions demonstrate why

Plaintiffs still seek a determination of the challenged restrictions and their application to legal assistance.

**Status Update Re: Third Unconstitutional Practice: Regulating Legal Expenses**

On September 23, 2026, Judge Ramos decided the Sanctions motion in Plaintiff's related federal action. *Nampiaparampil v. New York City Campaign Finance Board*, No. 23-cv-6391 (ER), ECF No. 169, at 8–9. The decision records Defendants' "consistent" position that "campaign-related legal expenses may be subject to auditing." (Exhibit B).

> Nampiaparampil argues that the Court should use its inherent powers to sanction Defendants for allegedly inconsistent positions between the present case and two cases outside of federal court. Doc. 111 at 3–4; *see* Doc. 131 at 1; Doc. 131-2 at 2–4. Defendants argue that their position has been consistent: campaign-related legal
>
> 8
>
> Case 1:23-cv-06391-ER Document 169 Filed 09/23/26 Page 9 of 10
>
> expenses may be subject to auditing, but legal proceedings not in furtherance of a candidate's campaign are not subject to audit. Doc. 157 at 2. Defendants also state that the statements they made in state courts are not sanctionable in federal court. *Id.* at 2–4.

*Excerpt from the September 23, 2026 Order on Sanctions By Judge Ramos (1:23-cv-06391)*

The court did not define “in furtherance of,” “campaign,” or “audit,” and did not differentiate a past candidacy from a potential future candidacy. Dr. Devi For NYC, a voluntary association, is an unrepresented Plaintiff before this court. The campaign has stated in prior affirmations that, because “campaign-related legal expenses are subject to auditing,” it did not appear with counsel before Justices Hagler or Ramseur for fear of incurring violations and penalties for itself and its officers. Judge Ramos’s denial of Sanctions appeared to rely on assurances by the Defendants permitting Plaintiff to retain counsel “in connection with this federal lawsuit,” (the Ramos case). He declined to sanction Defendants for statements pertaining to state court proceedings.

The state and federal proceedings and the CFB audit have proceeded in parallel. In federal court, Defendants asserted the pre-election First Amendment case before Justice Hagler was campaign-related and auditable. Whether the case before Justice Ramseur—the state action used in the preclusion chain against Mary Nam’s constitutional claims in the Eastern District of New York—is campaign-related remains disputed.

**Status Update Re: Fourth Unconstitutional Practice: The “Volunteer Ban”**

The volunteer ban applies to pro bono counsel. On June 1, 2026, Judge J. Paul Oetken permitted XJN to proceed with a First Amendment challenge to restrictions on his ability to volunteer on Plaintiff’s campaign. He directed Defendants to answer. On August 12, 2026, Judge Oetken denied Defendants’ Motion for Reconsideration and directed targeted Discovery into whether the CFB prohibited XJN from providing volunteer assistance during

the campaign audit. *Nampiaparampil v. New York City Campaign Finance Board et al.*, No. 25 Civ. 1346 (JPO), ECF Nos. 50, 60.

| | | |
|---|---|---|
| 08/12/2026 | 60 | MEMORANDUM AND ORDER denying 53 Motion for Reconsideration ; granting 59 Motion for Leave to File. For the foregoing reasons, Nampiaparampil's motion for leave to file a sur-reply is GRANTED and Defendants' motion for reconsideration is DENIED. The parties are directed to meet and confer on a proposed schedule for targeted discovery on the narrow issue of whether the CFB prohibited Nampiaparampil from contributing volunteer services to Devi's campaign in the auditing process. The parties shall file a joint status letter on the proposed schedule within fourteen days of the date of this Order. The Clerk of Court is directed to close the motions at Docket Numbers 53 and 59. SO ORDERED. (Signed by Judge J. Paul Oetken on 8/12/2026) (vfr) (Entered: 08/12/2026) |

*Docket: Xavier J. Nampiaparampil v. The NYC Campaign Finance Board et al. (1:25-cv-01346)*

Discovery concerns the same restrictions on unpaid professional assistance implicated in Plaintiffs' ability—or inability--to obtain legal help before the JPML and before this Court. Judge Oetken's September 10, 2026 scheduling Order provides for a jury trial and sets April 9, 2027 as the trial-ready date. ECF No. 65.

| | | |
|---|---|---|
| 09/10/2026 | 65 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). All expert discovery, including reports, production of underlying documents, and depositions, shall be completed no later than 45 d post 7(a), if later app. This case is to be tried to a jury. Counsel for the parties have conferred and their present best estimate of the length of trial is <2 weeks. SO ORDERED. Deposition due by 2/26/2027. Fact Discovery due by 2/26/2027. Ready for Trial by 4/9/2027. (Signed by Judge J. Paul Oetken on 9/10/2026) (vfr) (Entered: 09/10/2026) |

*Docket: Xavier J. Nampiaparampil v. The NYC Campaign Finance Board et al. (1:25-cv-01346)*

The related proceeding also concerns restrictions on obtaining professional assistance. Plaintiffs have alleged--across all proceedings--that Defendants interfered with their ability

to associate, meaningfully access the courts, and engage in protected activity by restricting consultation with professionals, including lawyers. Those allegations concern the CFB's valuation of unpaid professional assistance—pro bono assistance--as an in-kind contribution, applying contribution and expenditure restrictions to that pro bono assistance.

Plaintiff has alleged that her campaign remained insolvent, that she had reached the $6,000 personal contribution limit applied to her, and that her mother, then the Treasurer, had reached her $2,000 limit. The fundraising period for the 2021 election cycle had closed, and the CFB had declined to provide a safe harbor for opening a new bank account for legal spending. Plaintiff alleges that these restrictions prevented her from accepting her father's unpaid assistance during the past 5.5 years of CFB auditing and surveillance.

At the July 8, 2026 hearing, Defendants argued that, if volunteer services were classified as an in-kind contribution, a contribution limit would be constitutional. Judge Oetken questioned whether *Buckley v. Valeo* supported that proposition, distinguishing limits on expenditures made by volunteers from limits on the market value of their time. Exhibit C, transcript at 4:6–14.

MR. THAYER: Your Honor, I'm certainly no authority on the Campaign Finance Board, how they interpret their rules in all respects. My understanding is that volunteering for a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

Q783NAMC

campaign is not in all circumstances considered an in-kind contribution. If it were considered an in-kind contribution, limitations or a contribution limit would be constitutional. So I'm not sure that there's really a material issue of fact on that from Mr. Nampiaparampil's perspective.

THE COURT: No, let me just interrupt you there. Sorry for interrupting, but I don't think anything in *Buckley v. Valeo* or in other cases say that if you did include in-kind volunteering, that that would be constitutional. The only thing *Buckley* says on that point, and I think I point it out in a footnote, is if there is restrictions on the expenditures of volunteers, that they could be subject to a limit. But that's not the same thing as saying the market value of a volunteer's time being subject to a cap is constitutional.

*Excerpt from July 8, 2026 Hearing Before Judge Oetken (1:25-cv-01346)*

The hearing also addressed the relationship between unpaid professional assistance and the alleged restrictions on obtaining counsel. Corporation Counsel attorney David Thayer explained that an attorney's unpaid work for a campaign might be treated differently

depending on the nature of the retention and the surrounding facts, stating that "it would really depend on the facts." He also expressed his belief that Plaintiff's father's proposed assistance would not constitute an in-kind contribution. (Exhibit C). The subsequent August 12, 2026 Order directed factual discovery into whether the CFB had nevertheless prohibited that assistance; it did not decide the constitutional merits.

> MR. THAYER: I don't believe the board would consider that sort of volunteer service as an in-kind contribution. What may be different is if a professional, like an attorney or something, were to offer to do work for the campaign for free as a sort of general counsel for the campaign. But I don't even think that would necessarily be -- it would depend on the nature of the retention by the campaign as to whether it would really be volunteer or if it is actually a contribution. I think it would really depend on the facts in that circumstance.
>
> But I do not believe that the board would have considered Mr. Nampiaparampil's volunteerism to have been an in-kind contribution.

*Excerpt from July 8, 2026 Hearing Before Judge Oetken (1:25-cv-01346)*

The Office of Corporation Counsel appeared unable to define the bounds of the Volunteer Ban for Judge Oetken and needed to return to the Agency for clarification of its customs and policies.

> MR. THAYER: It seems to me, I guess what I would propose to the Court is I'd like to circle back with the CFB just to understand a little bit more and maybe to provide additional information to the Court about how volunteerism interacts with the in-kind contribution limits or the contribution limits, regardless of whether it's in-kind or direct monetary contribution.

**The Defendants' Public Statements:**

The Defendants, through their (former) Press Secretary, Tim Hunter, explained their stance on spending and speech in a November 21, 2024 press briefing:

> 00:34:56.490:
>
> "I guess this whole concept is leveling the playing field. Isn't that the whole point of this? Even though I don't like to say that because I don't want the Supreme Court to eliminate this. But yes, in some ways. So it's like you're balancing it out.
>
> Yeah. The Supreme Court, however, thinks, and Joe [Gallagher], correct me if I'm wrong, money, political contributions is what? Speech. So we can't limit speech.
>
> However, they determine that contribution limits are constitutional, but spending limits, if people aren't opting into a program, are unconstitutional, which kind of puts us in a hairy area. So we have to kind of find ways to work around that system that we're working with.
>
> So you kind of see the differences between program participant and non-program participant here. And if I'm not mistaken...Oops, sorry. We'll go back to this."
>
> 00:35:48.110

The CFB described the medical practice's conundrum—and the predicament that any law firm might find itself in, if it chose to assist plaintiffs.

> 00:29:40.986
>
> "So prohibited contributions. We talked about this earlier. So corporations and entities, no shade to the state, can't give corporate contributions to the CFB [sic] when you're running for office locally here in New York City. Partnerships and LLPs ... Those contributions are prohibited...But labor unions are allowed. Labor unions are allowed."
>
> 00:30:09.286

The CFB also described its use of real-time auditing and compliance visits and explained that it does not publicly disclose all audit and statement-review methods:

> 00:25:54.106
>
> "In our audit process and our statement review process, which we'll get through, we're not going to get into the nitty-gritties of that, because we don't usually broadcast every way that we audit because we want to make sure that we're not giving people a roadmap on how to do anything."
>
> 00:26:10.026
>
> ...
>
> 00:47:30.242
>
> "So you've got pre-election, we have the disclosure statement review, compliance visit, payment, then of course, there's Election Day, and then there's also post-election. Post-election audit, board action, and the final audit report ... We do all of our auditing real time, so it's happening as the campaign is going on... There's a number of reasons for compliance visits. It could also be if there's any issues with documentation, treasurers, things like that. I think it's, again, special compliance and audit. It's like they run a really tight ship... I don't even have insight to a lot of some of those things. They're not calling me and saying, 'Hey, Tim, heads up, we're going to do a compliance visit here.' So, all that is happening real-time because we don't want to tip people off that [they] might be violating our program's rules... I think that they can't turn us away if they're trying to get thousands of dollars in taxpayer money."
>
> 00:49:26.386

Related constitutional concerns about the treatment of volunteer services were publicly raised at least as early as 2001. Plaintiffs have identified press coverage, advisory requests, and public hearing testimony bearing on the CFB's notice of those concerns and its subsequent response.

The latest developments bear on Plaintiffs' previously briefed arguments concerning their opportunity to fully and fairly litigate before the JPML and to fully and fairly litigate the underlying campaign-related cases, which they presented for consideration of consolidation and transfer.

**Enforcement Against Comparators:**

**Celia Devi Dosamantes and Dr. Devbala Ramanathan, M.D.**

In its final audit report concerning Celia For the Community's 2015 campaign, the CFB treated an unpaid legal-services balance as a campaign contribution. The Board stated that the campaign had underpaid a legal-services vendor by $6,000 and classified that amount as an in-kind contribution exceeding the applicable $2,750 contribution limit by $3,250. The same paragraph separately addressed an underpaid employee and the candidate's own contributions. The Board assessed $9,750 in penalties for this group of contribution violations. CFB, Final Audit Report of Celia For the Community, ¶¶ 58–61 (2015 election).

The report also explains that in-kind contributions include services provided free of charge or at a special discount unavailable to others; that certain extensions of credit may be treated as contributions; and that forgiven or reduced outstanding liabilities are considered contributions. It separately states the prohibition on corporate and other specified organizational contributions. Id. ¶ 53. These provisions identify several ways that financial arrangements for legal assistance may become subject to campaign-finance restrictions. Paragraph 60 documents the Board's actual application of contribution limits

to the unpaid legal-services balance. The $8,250 limit discussed there is the candidate's own-contribution limit, not an overall campaign expenditure limit. Id. ¶¶ 59–60.

53. Campaigns may not accept a campaign contribution from any corporation, limited liability company (LLC), or partnership. *See* N.Y.C. Charter § 1052(a)(13); Admin. Code §§ 3-702(8), 3-703(1)(l); Board Rules 1-04(c)(1), (e), (g), 1-05. In-kind contributions include goods or services donated to a candidate free of charge or at a special discount not available to others. *See* Admin. Code § 3-702(8); Board Rule 1-02. Creditors who extend credit beyond 90 days are considered to have made a contribution equal to the credit extended, unless the creditor continues to seek payment of the debt. Outstanding liabilities that are forgiven or settled for less than the amount owed are also considered contributions. *See* Board Rules 1-04(g)(4), (5).

58. Campaigns are prohibited from accepting contributions (monetary or in-kind) in excess of the applicable contribution limit. *See* Admin. Code §§ 3-702(8), 3-703(1)(f), (11); Board Rules 1-04(c)(1), (h), 1-07(c). The contribution limit for candidates in the 2015 elections for City Council was $2,750. In-kind contributions include goods or services donated to a candidate free of charge or at a special discount not available to others. *See* Admin. Code § 3-702(8); Board Rule 1-02.

59. Further, candidates participating in the Program may not contribute an amount more than three times the applicable contribution limit to their own campaigns. *See* Admin. Code § 3-703(1)(h).

60. Pursuant to documents provided to CFB staff, the Campaign underpaid a legal services vendor $6,000, which was considered an in-kind contribution $3,250 in excess of the $2,750 limit. In addition, the Campaign underpaid an employee $3,800, which was considered an in-kind contribution $1,050 in excess of the $2,750 limit. Last, the Candidate contributed a total of $11,850 to the Campaign, $3,600 in excess of the $8,250 contribution limit applicable to the Candidate.

61. The Board assessed a $9,750 penalty for these violations.

*CFB Final Audit Report of Celia For the Community*

**Dr. Robby Mahadeo, M.D.**

The CFB's final audit report concerning Dr. Robby For City Council's 2005 campaign likewise documents its regulation of legal expenses. The campaign sought an exemption for, among other expenses, $6,000 in legal services relating to election matters and a petition challenge. The Board rejected the claimed exemption for insufficient documentation. The accompanying schedule identifies the three legal-services payments, totaling $6,000, as inadequately documented and lists the asserted deficiencies: unsigned or undated invoices lacking hours worked, an insufficient description of the work, and an unsigned or undated legal-services agreement. CFB, Final Audit Report of Dr. Robby For City Council, Campaign's Response and Board's Response concerning exempt expenditures; id., Exhibit 1a, Inadequately Documented Exempt Expenditures, nn. 3, 5, 7 (2005 election).

Thus, the Board's stated ground was failure to substantiate the exemption. The documented consequence was that the legal-services expenses did not receive the claimed exemption from campaign spending limits. The excerpt concerning candidate loans separately identifies $13,000, $13,000, and $10,000 in campaign loans and related reporting findings. Taken together, these records establish that the CFB reviewed and rejected claimed legal-expense exemptions, regulated candidate financing, and continued to impose program obligations while liabilities remained outstanding. Id., Exhibit 1a; id., findings concerning candidate loans; id., concluding paragraph concerning outstanding liabilities.

**Campaign's Response**

The Campaign stated that it has provided documentation for $54,000 in exempt claims: a signed contract from a consultant for expenditures totaling $10,000 "that called for professional services to be provided for the Campaign's business as it relates to Campaign Finance," with the added handwritten notation of "exempt compliance services," and an agreement for legal service "election matters," with invoices for expenditures totaling $6,000. Again, the Campaign made a handwritten note indicating "exempt petition challenge." The Campaign also provided documentation for $38,000 in wages for petitioning.

**Board's Response**

The Campaign submitted insufficient documentation to support its exempt claims.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11 | F | R0000299 | 07/19/05 | 07/19/05 | Grimaldi, Neil | PETIT | legal services | $3,000 | 5,7 |
| 11 | F | R0000366 | 07/25/05 | 07/25/05 | Grimaldi, Neil | PETIT | legal services | $2,000 | 5,7 |
| 12 | F | R0000818 | 07/19/05 | 08/23/05 | Grimaldi, Neil | PETIT | legal services | $1,000 | 5,7 |

**Notes:**

1 No documentation was submitted.

2 The dates of these transactions are beyond the dates of the petitioning period and therefore cannot be considered exempt expenditures because their purpose is unclear.

3 Time sheets submitted by the Campaign were either not signed by the Campaign, not dated, or did not give hours worked.

4 The Campaign did not provide a contemporaneous detailed consultant agreement stating a description of work performed.

5 The consultant agreement submitted by the Campaign was not in sufficient detail to determine if the expenditure was exempt.

6 Documentation submitted was illegible.

7 The Legal Service agreement was not signed or dated.

*Excerpts From CFB Final Audit Report of Dr. Robby For City Council*

The payments for those services appear to have been attributed to the Candidate, who had never received matching funds. Then he and the (potentially unpaid) Treasurer faced fines, through joint and several liability, for over-the-limit contributions.

a) The Campaign did not file the required daily disclosure statements to report the following loans that were reported subsequently on its financial disclosure statements:

| Lender | Stmt/Sch/TransID | Date Received | Amount |
|---|---|---|---|
| Robby Mahadeo * | 13/I/R0000901 | 08/31/05 | $13,000 |
| Robby Mahadeo * | 13/I/R0000905 | 09/02/05 | $13,000 |

*These transactions also appear in Finding #2.

b) The Campaign did not file the required daily disclosure statement for the following loan that was not reported on its financial disclosure statements:

| Lender | Stmt/Sch/TransID | Date Received | Amount |
|---|---|---|---|
| Robby Mahadeo* | Not reported | 09/07/05 | $10,000 |

*This transaction also appears in Findings #2.

1. **EXPENDITURES – Exceeding the Legal Limit**

Program participants are limited in the amount of money they can spend on their campaigns. Expenditure limits curtail excessive campaign spending and level the playing field for candidates. An expenditure is considered to be made when the goods and services are received, used or rendered. Certain limited expenditures are exempt from the

*CFB Final Audit Report of Dr. Robby For City Council*

## Private Money and the Content of Legal Advocacy

The Mahadeo report states that the Program was designed to limit the role of private financing in the political process and that participating candidates agree to contribution and spending limits in exchange for eligibility for public matching funds.

CAMPAIGN FINANCE BOARD
FINAL AUDIT REPORT OF
DR. ROBBY FOR CITY COUNCIL

BACKGROUND

The Campaign Finance Program (the "Program") was designed to limit the role and influence of private money in the political process. Candidates who voluntarily participate in the Program can qualify to have private contributions matched with public money. In exchange, the participants agree to full disclosure of their campaign finances, as well as to strict contribution and spending limits.

*CFB Final Audit Report of Dr. Robby For City Council*

Plaintiffs contend that this stated objective cannot, by itself, justify restricting private resources used to obtain legal advice, defend against agency enforcement, or challenge the agency's authority. The constitutional question concerns what the CFB regulates when it treats that legal assistance as campaign activity, including the consequences for the person providing assistance (ex. candidate, individual attorney, or law firm) and the subject matter of the representation.

**Continuing Obligations and Prior Judicial Decisions**

The Mahadeo report expressly states that, because the campaign had not reported extinguishing all liabilities from the 2005 election, program requirements, including contribution limits, remained in effect for activity related to that election. It also reserved the Board's ability to demand further information and proof of compliance. CFB, Final Audit Report of Dr. Robby For City Council, concluding paragraph concerning outstanding liabilities (citing then-applicable Board Rules 3-02(b) and 4-01(a)). This provision supports Plaintiffs' concern that unresolved liabilities can perpetuate regulatory

obligations after the election. Applied to legal expenses, Plaintiffs allege, such obligations can impede the assistance needed to resolve those very liabilities and challenge the continuing regulation.

> Because the Campaign has not reported extinguishing all liabilities from the 2005 election, all other Program requirements, including contribution limits, remain in effect for activity related to that election. Please be advised that the Board may in the future require the Campaign to submit relevant information and proof of ongoing compliance with the 2005 election requirements. *See* Campaign Finance Board Rules 3-02(b) and 4-01(a).

*CFB Final Audit Report of Dr. Robby For City Council*

The CFB continued to audit the 2005 campaign in 2011 with an "information subpoena." The subsequent decisions must be read according to the issues they addressed. In Mahadeo v. New York City Campaign Finance Board, 514 F. App'x 53, 54–55 (2d Cir. 2013) (summary order), the Second Circuit affirmed the dismissal of Mahadeo's § 1983 claims as untimely and rejected his pro se arguments for a later accrual date or tolling. Its discussion identifies the July 2011 information subpoena as relating to enforcement arising from the 2005 election; 2007 was the year of the penalty determination and final audit. In New York City Campaign Finance Board v. Mahadeo, 88 A.D.3d 536, 536–37 (1st Dep't 2011), treasurer Ray L. Trotman appeared pro se, and the First Department affirmed the judgment enforcing penalties. The court addressed collateral attack, joint and several liability, and obligations of program participants even when they ultimately received no public funds.

The Treasurer, also *pro se*, appealed to the First Department, but the judgment against him was affirmed.

> Even assuming, arguendo, Trotman's appellate argument was not precluded, and was properly preserved for appellate consideration, it is unavailing. Trotman, as the principal treasurer for defendant-candidate, was subject to joint and several liability under the public matching fund program, and he was obligated to ensure the campaign's compliance with all public matching fund requirements, as set forth in Administrative Code § 3-701 *et seq.*, even if [*2]the campaign ultimately failed to qualify for, or accept, public funds under the program (*see* Administrative Code § 3-703 [11]; § 3-711; *Matter of Espada 2001 v New York City Campaign Fin. Bd.*, 59 AD3d 57, 63 [2008]).
>
> To the extent Trotman argues that the Board's determination was "arbitrary and capricious" as it was made without a hearing, and without regard to the facts, such argument again constitutes an impermissible collateral attack upon the Board's determination. In any event, the record reflects that the defendants failed to request a hearing and, further, that the Board properly based its determination regarding penalties upon defendants' disclosures and the applicable statutory scheme (*see* Administrative Code § 3-701 *et seq.*).

*New York City Campaign Fin. Bd. v. Mahadeo, 88 A.D.3d 536 (1st Dep't 2011).*

Neither published decision expressly analyzes the constitutional question presented here: whether the challenged campaign-finance classifications may be applied to prevent or materially restrict obtaining legal assistance to defend against the CFB or challenge its authority. Plaintiffs ask this Court to address that question expressly. The comparator records bear on the objective basis for Plaintiffs' alleged chilling injury and on their claim that the restrictions reflect official municipal policy. Plaintiffs offer these records to document enforcement mechanisms relevant to their existing claims and to permit meaningful review of the constitutional consequences of those mechanisms.

Plaintiffs also note that these documented enforcement actions—penalizing unpaid or inadequately documented legal expenses and holding post-election obligations open indefinitely—have repeatedly fallen on Indian-American political challengers like Celia Devi Dosamantes, Dr. Devbala Ramanathan MD, Dr. Robby Mahadeo MD, Mary Nampiaparampil, and Plaintiff, raising selective-enforcement and equal-treatment concerns that warrant discovery rather than threshold dismissal.

**Continuing Effects on Plaintiff's Family and Ability to Litigate**

Plaintiff previously informed this Court that her daughter, RT, despite having "Priority 1" eligibility for the City's Gifted & Talented program, had been denied access to all NYC public schools. The City initially attributed the problem to Plaintiff and subsequently described it as a website glitch. That enrollment problem was not corrected for the school year at issue. Plaintiff then encountered heightened burdens in applying for RT's admission for the following school year, 2026–2027.

On June 11, 2026, MySchools displayed "You did not receive an offer" under AT's Gifted & Talented results and showed no pending offers. AT was already attending TAG. These displays and the initial absence of a response from DOE Enrollment, left Plaintiff uncertain whether AT would retain her placement for 2026–2027. Plaintiff sought clarification and assistance while facing the restrictions on obtaining counsel previously raised in this action.

All of the other G&T parents Plaintiff spoke to said they had a completely different myschools screen. They did not have any "offer" or "waitlist" messages, just a statement of continued enrollment. One parent interpreted the screen as signifying AT's need to reapply to maintain her enrollment at the school due to sub-par performance. AT had received perfect scores in every subject during every quarter of the preceding school year, and her teachers had praised her interpersonal skills during parent-teacher conferences. Plaintiff emailed DOE Enrollment, which the school had previously identified as the final decision-maker on enrollment issues. She initially received no response.




*Myschools.nyc: "You did not receive an offer" (Timestamped June 11, 2026 11:40AM)*




*Myschools.nyc: "You don't have any offers" (Timestamped June 11, 2026 11:43AM)*

Following that notice, a false rumor circulated that AT had performed poorly and was being expelled. The rumor was damaging and contributed to accusations that Plaintiff's negligence had caused the children's enrollment problems. Parents with whom Plaintiff spoke reported that they had never encountered such a situation.

These events illustrate the practical effects of the counsel restrictions already challenged here. Faced with uncertainty about whether legal assistance concerning alleged campaign-related retaliation would itself be regulated and audited, Plaintiff sought assistance from the PTA instead of an attorney. On June 15, 2026, the JPML also docketed Plaintiff's notice identifying RT as a potential tag-along plaintiff in a future request for consolidation and transfer involving discrimination and retaliation. On June 24, 2026, DOE's Director of Elementary School Admissions confirmed that both children would attend TAG, apologized for a profile glitch affecting AT's school card, and stated that nothing further needed to be done.

That confirmation resolved the immediate enrollment uncertainty. It did not resolve Plaintiff's previously raised challenge to restrictions that impaired her ability to obtain legal assistance while responding to those events. Plaintiff submits this update because the alleged retaliation and the barriers to obtaining counsel affected her own rights, consumed time needed for this litigation, and placed her ability to continue litigating under additional pressure. Plaintiff could not replace public schooling with home-schooling while maintaining her medical practice and this litigation across multiple courts and agencies.

The children's potential claims are distinct from Plaintiff's own claimed injuries. This update concerns the family circumstances previously presented to this Court and their continuing relevance to Plaintiff's access to counsel and ability to pursue the relief already requested.

**Eligibility for G+T Programs**

**Juanjama Ledesma** <JLedesma2@schools.nyc.gov> Wed, Jun 24, 2026 at 9:17 AM
To: Devi Nampiaparampil <devichechi@gmail.com>

Hello,

Both students will be attending TAG. Apologies for the profile glitch on [redacted] school card. Nothing to be done.

**Jamall Ledesma**

Director of Elementary School Admissions

NYC Public Schools | Office of Student Enrollment

**Continuing Effects on the Medical Practice and Need for Legal Assistance**

In January 2026, Plaintiff submitted a complaint to the Small Business Administration's Office of Inspector General concerning the denial of access to counsel affecting Metropolis Pain Medicine, PLLC, a federal contractor. Plaintiff explained that the practice remained responsible for its disaster loan while unable to obtain legal advice concerning the ongoing litigation and its legal and financial obligations. Following that submission, Plaintiff and the practice received one year of payment relief. Plaintiff also experienced fewer administrative barriers proving that she is a physician. The relief temporarily reduced the payment burden. It did not cancel the loan, resolve the practice's outstanding legal obligations, or remove the restrictions on obtaining counsel challenged in this action.

Meanwhile, the practice continues to treat medically fragile patients, including current and former government employees and their families. Plaintiff alleges that the City's health-coverage arrangements have imposed new preauthorization requirements with increased frequency and severity, and delays in responding, which obstruct access to care. The practice has also faced burdensome documentation and audit demands and retroactive clawbacks for purported lack of "medical necessity," including after preauthorization had been obtained. In Plaintiff's experience, these burdens substantially exceed those imposed by other health insurers. They affect the practice's ability to provide care, to maintain its operations while pursuing its pending claims, and to maintain its financial reserves. Plaintiff has omitted patient-identifying information from this public submission.

(Plaintiff incidentally notes the salutation on the letters. "Metropolis Pain Medicine, PLLC" is the healthcare provider contracted with this plan).




*Recent Denial and Post-Procedure Clawback Correspondence From NYC*

The SBA loan documents identify legal claims among the practice's assets and contain provisions addressing the rights of the United States as sovereign and the application of municipal requirements. Metropolis has active litigation in state and federal court. These provisions create additional questions requiring independent legal advice, including the consequences of default and the treatment of the practice's assets and pending claims. Temporary payment relief does not answer those questions or provide the professional assistance needed to address them.

The prior rulings further illustrate the unresolved problem. The state court rejected the asserted denial of counsel as a basis for vacatur, while the federal court declined to review the state court's determinations. Plaintiff continues to seek adjudication here of the restrictions on legal assistance already challenged in this action and their ongoing effects on the individual, corporate, and voluntary association Plaintiffs.

[4] While plaintiff's opposition to the previous motion to dismiss did allege that the CFB "could charge us with campaign finance violations should I hire a lawyer" (*see* NYSCEF doc. no. 104 at ¶ 20), this evidences two problems: (1) plaintiff was aware of the purported misrepresentations on the prior motion (thus precluding vacatur on this application), and (2) since none of plaintiffs' claims were premised on this allegation, they cannot show that, under CPLR 5015 (a)(2), their ability to hire an attorney would have changed the outcome of this litigation.

**159019/2022 NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE BOARD** **Page 3 of 4**
**Motion No. 002**

Excerpt From Judge Ramseur's April 29, 2025 Order in *Devi Nampiaparampil, MD and Metropolis Pain Medicine PLLC v. The NYC Campaign Finance Board* (159019/ 2022)

Plaintiff and the practice also have a signed agreement to testify against the federal government in state and federal opioid litigation. Those obligations add to the concrete need for independent legal advice. Plaintiff, her family, her practice, and her campaign continue to face these overlapping obligations while the access-to-counsel issues presented here remain unresolved.

## Continuing Controversy and Request for Determination

These updates concern matters previously presented to this Court and the continuing consequences of the practices already challenged. The children's eventual enrollment, temporary SBA payment relief, and Defendants' representation that the campaign audit concluded addressed particular immediate circumstances. They did not resolve the

challenged restrictions on paid and unpaid legal assistance or their application to the ongoing proceedings.

**Conclusion:**

The controversy remains live. Plaintiff respectfully requests that the Court consider these developments when resolving the pending motion and requests for relief, and expressly address the previously raised challenge to the regulation of legal expenses and unpaid legal counsel. The underlying proceedings and regulatory obligations continue while that challenge remains undecided.

Following Plaintiffs' March 27, 2025 appearance before the JPML, the Panel issued three subsequent decisions citing *In Re Mary & Devi Nampiaparampil Litigation*, 776 F. Supp. 3d 1360, 1362 (J.P.M.L. 2025), for the principle that "Section 1407 does not grant the Panel the authority to decide questions going to the merits of a case." See In re Kia Hyundai Vehicle Theft Marketing, Sales Practices, & Products Liability Litigation, MDL No. 3052, Transfer Order at 2 (J.P.M.L. Oct. 1, 2025), ECF No. 329; In re Roundup Products Liability Litigation, MDL No. 2741, Remand Order at 1 (J.P.M.L. Dec. 11, 2025), ECF No. 4010; In re Amazon Tariff Litigation, MDL No. 3197, Transfer Order at 3 (J.P.M.L. Oct. 2, 2026), ECF No. 29. In Plaintiffs' own proceeding, the Panel expressly explained that it could not render a decision invalidating a CFB rule. Its denial of centralization therefore did not adjudicate the constitutional merits of the restrictions challenged here. Because the JPML cannot reach those merits— and because the action before Judge Oetken concerns Plaintiff's father's individual volunteer claim—this Court remains the forum directly presented with

Plaintiffs' broader challenge to the regulation of legal expenses and professional legal assistance.

Respectfully submitted,

Devi Nampiaparampil
Pro Se Plaintiff
111 John Street Suite 2509
New York, NY 10038
(312) 523-5935
devichechi@gmail.com

# EXHIBIT A:

# VACATUR OF DISMISSED APPEAL

# 2025-04148

FILED: APPELLATE DIVISION - 1ST DEPT 10/01/2026 08:43 AM 2025-04148
NYSCEF DOC. NO. 29 RECEIVED NYSCEF: 10/01/2026

# Supreme Court of the State of New York
## Appellate Division, First Judicial Department

Present – Hon. Saliann Scarpulla, Justice Presiding,
Manuel J. Mendez
Marsha D. Michael
Margaret A. Chan
Shlomo S. Hagler, Justices.

---

Devi Nampiaparampil Metropolis Pain Medicine, PLLC, doing business as Devi Nampiaparampil, M.D.,
Plaintiff-Appellant,

-against-

New York City Campaign Finance Board,
Defendant-Respondent.

Motion No. 2026-04014
Index No. 159019/22
Case No. 2025-04148

---

An appeal having been taken to this Court from an order of the Supreme Court, New York County, entered on or about May 27, 2025,

And plaintiff-appellant, pro se, having moved for an order directing Supreme Court to certify and transmit the record for purposes of this appeal, or, in the alternative, for leave to proceed by reproduced record without formal certification, and to vacate the dismissal of the appeal and for an extension of time to perfect same, or, in the alternative to stay the appeal,

Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

It is ordered that the motion is granted to the extent of vacating the dismissal of the appeal, reinstating the appeal, and extending the time to perfect same to the January 2027 Term of this Court, and otherwise, the motion is denied.

ENTERED: October 01, 2026

Susanna Molina Rojas
Clerk of the Court

# EXHIBIT B:

# RELEVANT EXCERPT

# FROM JUDGE RAMOS'

# DECISION ON SANCTIONS

# (SEPTEMBER 23, 2026)

notice of the motion, the discussion occurred only eleven days prior to the filing of the motion, not twenty-one days or more. *See Star Mark*, 682 F.3d at175.

Nampiaparampil did not otherwise serve the instant motion on Defendants before filing it with the Court on February 10, 2025. *See* Docs. 111, 158. As such, Nampiaparampil did not meet the procedural requirement to serve the motion detailing the specific conduct to Defendants twenty-one days before filing the motion. *See* Fed. R. Civ. P. 11(c)(2); *Star Mark*, 682 F.3d at 175. On this basis alone, the motion for sanctions must be denied.

In the March 2025 Letter filed after the instant motion and titled "notice of non-compliance with safe harbor notice," Nampiaparampil states that her February 27, 2025 notice to Defendants triggered the twenty-one day period for Defendants to take corrective action. Doc. 131 at 1. However, Nampiaparampil did not file a motion for sanctions twenty-one days or more after sending the safe-harbor notice. Nampiaparampil does not argue the March 2025 Letter is a motion for sanctions; she instead states she filed the letter because it was relevant for the Judicial Panel on Multidistrict Litigation. *See id.* at 1. In fact, she later confirms that she intended the instant motion, Doc. 111, to be her motion for sanctions. Doc. 158 at 4. For the avoidance of doubt, the March 2025 Letter does not satisfy the Rule 11 requirements either, for the substantive reasons listed below, the alleged conduct is not sanctionable.

**B. The Substantive Requirements of Rule 11**

Even if Nampiaparampil satisfied the procedural requirements for Rule 11 sanctions, a request for sanctions would still be denied based on the substance of the allegations.

Nampiaparampil argues that the Court should use its inherent powers to sanction Defendants for allegedly inconsistent positions between the present case and two cases outside of federal court. Doc. 111 at 3–4; *see* Doc. 131 at 1; Doc. 131-2 at 2–4. Defendants argue that their position has been consistent: campaign-related legal

expenses may be subject to auditing, but legal proceedings not in furtherance of a candidate's campaign are not subject to audit. Doc. 157 at 2. Defendants also state that the statements they made in state courts are not sanctionable in federal court. *Id.* at 2–4.

The Court may impose sanctions through its inherent powers, which derive from the very nature of courts and their need to be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31 (1962)). The Supreme Court has made clear that because of the "very potency" of a court's inherent powers, they should be exercised "with restraint and discretion." *Chambers*, 501 U.S. at 44. "The issue of sanctions brings to the surface the tension between the goal of discouraging abuse of the legal system and that of encouraging refinement of the law through the assertion of novel but non-frivolous legal theories." *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999). Accordingly, a clear "showing of bad faith" is required to justify the use of the court's inherent power. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (citation omitted).

The Court does not find bad faith or improper purpose in the Defendants' repeated assurances that it is permissible for Nampiaparampil to retain a lawyer in connection with this federal lawsuit. To the extent that Nampiaparampil asks this Court to compare Defendants' position to their position in other courts, the Court will not sanction Defendants' statements in another court. "[B]ecause it is a federal rule, Rule 11 does not apply to filings in state court." *Ray v. Fariello*, No. 18 Civ. 11211 (JLR) (KHP), 2024 WL 2785261, at *3 (S.D.N.Y. May 10, 2024), *report and recommendation adopted*, No. 18 Civ. 11211 (JLR), 2024 WL 2785141 (S.D.N.Y. May 28, 2024); *see Mareno v. Jet Aviation of America, Inc.*, 970 F.2d 1126, 1128 (2d Cir. 1992) (holding Rule 11 has no retrospective application to a complaint filed in state court).

# EXHIBIT C:

# TRANSCRIPT OF HEARING

# BEFORE JUDGE OETKEN

# (JULY 8, 2026)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

XAVIER JOSEPH NAMPIAPARAMPIL,

Plaintiff, New York, N.Y.

v. 25 CV 1346 (JPO)

NEW YORK CITY CAMPAIGN FINANCE BOARD, et al.,

Defendants.

------------------------------x Teleconference

July 8, 2026
12:00 p.m.

Before:

HON. J. PAUL OETKEN,

District Judge

APPEARANCES

XAVIER JOSEPH NAMPIAPARAMPIL
Pro Se Plaintiff

NEW YORK CITY LAW DEPARTMENT
Attorneys for Defendants
BY: DAVID S. THAYER

THE COURT: Good afternoon. This is Judge Oetken. Mr. Hampton will call the case.

THE DEPUTY CLERK: This is in the matter of Xavier Nampiaparampil v. The New York City Campaign Finance Board, et al.

Starting with the pro se plaintiff, please state your name for the record.

MR. NAMPIAPARAMPIL: Xavier Nampiaparampil.

MR. THAYER: Good afternoon. This is David Thayer from the New York City Law Department on behalf of the defendant.

THE COURT: Good afternoon. This Judge Oetken.

I scheduled the call after issuing my decision on the motion to dismiss which addressed the plaintiff's claims, and granted the motion to dismiss in part and denied the motion to dismiss in part. And I scheduled the call to discuss where we go from here with the case.

In the interim, the defendants filed a motion for reconsideration and the plaintiff responded, so I wanted to address that and sort of figure out where we go from here in the case.

So the claims that I determined survived related to Mr. Nampiaparampil's claims on the $2,000 limit to campaign contributions, and that included volunteering with respect to certain audit activity after the 2021 campaign that would not

be time barred. Earlier activity would be time barred.

And in the motion for reconsideration defendants have argued, well, under *Buckley v. Valeo*, the campaign contribution limit itself is constitutional. But then in the response, Mr. Nampiaparampil clarified, I'm not challenging the restriction as to financial contributions but only as to volunteering.

And so I wanted to get some clarification. We now know that that's what the plaintiff's claim is. It has to do with the inclusion of volunteer services in the 2,000 in-kind contributions, essentially of volunteer time in the $2,000 campaign contribution limit.

So, where does that leave us? I'm still a little confused about what the actual legal background is. The regulation that I pointed to in footnote 4 of my opinion says that volunteer services will not count toward the $2,000 limit. So I'm little confused about what's going on, whether certain services are carved out from that and do count.

So Mr. Thayer, sorry, that was kind of a lot, but where do you think that leaves us? And maybe you could sort of clarify if you know the status of how the city's treating the sort of in-kind volunteer contributions of time.

MR. THAYER: Your Honor, I'm certainly no authority on the Campaign Finance Board, how they interpret their rules in all respects. My understanding is that volunteering for a

campaign is not in all circumstances considered an in-kind contribution. If it were considered an in-kind contribution, limitations or a contribution limit would be constitutional. So I'm not sure that there's really a material issue of fact on that from Mr. Nampiaparampil's perspective.

THE COURT: No, let me just interrupt you there. Sorry for interrupting, but I don't think anything in *Buckley v. Valeo* or in other cases say that if you did include in-kind volunteering, that that would be constitutional. The only thing *Buckley* says on that point, and I think I point it out in a footnote, is if there is restrictions on the expenditures of volunteers, that they could be subject to a limit. But that's not the same thing as saying the market value of a volunteer's time being subject to a cap is constitutional.

Am I missing something there?

MR. THAYER: I think that's correct. *Buckley* isn't saying directly that, as your Honor puts it, the market value of the volunteer time is somehow -- contribution limits on that is somehow constitutional. It is talking about the expenses incurred by the volunteer in the course of their volunteer activity.

But, I guess if I'm understanding Mr. Nampiaparampil, what he would have liked to have volunteered for or volunteered for the campaign to do was to provide some sort of consulting services and -- is that correct?

MR. NAMPIAPARAMPIL: That's true.

THE COURT: That's true?

MR. NAMPIAPARAMPIL: Yes, consulting services means I have expertise in statistical modeling and, you know, so I would like to try to contribute some type of help that way so volunteer work that way.

MR. THAYER: I don't believe the board would consider that sort of volunteer service as an in-kind contribution. What may be different is if a professional, like an attorney or something, were to offer to do work for the campaign for free as a sort of general counsel for the campaign. But I don't even think that would necessarily be -- it would depend on the nature of the retention by the campaign as to whether it would really be volunteer or if it is actually a contribution. I think it would really depend on the facts in that circumstance.

But I do not believe that the board would have considered Mr. Nampiaparampil's volunteerism to have been an in-kind contribution.

THE COURT: So, Mr. Nampiaparampil, could you clarify your allegations here with respect to this claim? Is it the case that the Campaign Finance Board or their personnel informed you or informed the campaign that you could not provide those consulting services in connection with some sort of post-campaign audit or what did they tell you? How did they inform you of that?

MR. NAMPIAPARAMPIL: I have an expertise, I have a PhD in business, so I have a good background in accounting also. But I was told by my daughter who was the candidate that I would not be able to do any of them because it would be considered part of my contribution, so that is not allowed.

THE COURT: So someone told your daughter that?

MR. NAMPIAPARAMPIL: No. Daughter told me.

MS. NAMPIAPARAMPIL: I'm here also, your Honor. If I can help.

MR. NAMPIAPARAMPIL: So that was information from the Campaign Finance Board at that time. So I am not supposed to do anything by way of auditing or in helping with the statistical modeling. So I kept away from everything.

THE COURT: So, Ms. Devi Nampiaparampil, could you please state your full name.

MS. NAMPIAPARAMPIL: Sure. It's Devi Nampiaparampil.

THE COURT: And did you want to add anything just to clarify on that point?

MS. NAMPIAPARAMPIL: Yes. So I was told specifically by CFB employees, one of them her name is Jacqueline Williams, but I was told specifically that the CFB is going to value these what they call in-kind contributions, but value different services. So like Mr. Thayer said, legal services, accounting services, any political consulting and anybody that has any kind of service that involves any professional expertise. So

if someone is passing out a flyer, that's okay. But if somebody is doing anything more than that, then it's going to count as an in-kind contribution and it has to be valued.

But the thing is if, so, for example, if a campaign has -- let's say a campaign has a million dollars and it gets some legal help, it has to pay for the legal assistance with whatever value, you know, is come up with. So usually if a lawyer charges a specific price, then they pay that. But let's say the lawyer discounts the price or the lawyer works for free pro bono, that's not allowed. That's considered an in-kind contribution because the service has a monetary value, according to the CFB, and that monetary value is being given for free.

So they applied it across services. So it's not in the statute. It's in the way they tell us in the training and subsequent conversations with the CFB liaisons that get assigned to you by the CFB, Campaign Finance Board. But that's their sort of regime.

So they didn't specifically say, you know, one person can't volunteer and that person can. They say it as a broad enforcement policy that was applied to the campaign.

THE COURT: When did they tell you? How did they tell you this and when did they tell you this? In other words, was it on the phone, in person, or by a writing?

MS. NAMPIAPARAMPIL: First it was in these mandatory

training sessions, so those are like these PowerPoint presentations where they are speaking along with. Then they told us, let's see, I had these different like video chat and, yeah, video chat or a few video chats with Jacqueline Williams where she reinforced that. That was my CFB liaison.

Even after the campaign was over, so after Election Day, because our problem is the campaign ran out of money. It ran out of money on Election Day. And at various times during the campaign, it spent its money on just regular things like signs, flyers, those types of things, so we are relying on volunteers.

So, after Election Day, she also said again that we don't have money, which is true, to pay for accounting or legal services to help with the audit to defend ourselves, but actually, at that time the campaign didn't have any alleged violations or anything. But she said we are not allowed to do that. We have to rely on CFB to help us as a result.

So, basically, CFB is acting as the legal counsel and accounting counsel for us. So they are on both sides and then that's become an issue.

THE COURT: Thank you for that clarification. I just wanted to understand what the claim is here.

Mr. Nampiaparampil is the plaintiff.

So Mr. Thayer, I guess your motion for reconsideration kind of goes to this sort of separate issue of funding limits,

but we now know that what the claim is really about is this volunteer services issue and kind of the line which might be a blurry line between the right to volunteer and the First Amendment protection of that right, and where volunteer services kind of reach some sort of professional qualification where they might be subject to that limit.

So I wonder where do you think that leaves us in terms of whether discovery is required, whether there is a legal issue that should be briefed or what.

MR. THAYER: It seems to me, I guess what I would propose to the Court is I'd like to circle back with the CFB just to understand a little bit more and maybe to provide additional information to the Court about how volunteerism interacts with the in-kind contribution limits or the contribution limits, regardless of whether it's in-kind or direct monetary contribution.

Maybe I can address this on reply. It may result in us teeing up just a legal issue for the Court about whether volunteering sort of falls within the ambit of *Buckley* or a subsequent case, or it may give me a better sense of whether, all things being equal, the case really should move to discovery.

I am just thinking that maybe it would be best in the immediate future for me to try to either narrow or resolve the issues on reply, if the Court would be amenable to that.

THE COURT: I think that's fine. How long do you think you need for reply?

MR. THAYER: I think our deadline is currently next Monday. I'd ask if Court wouldn't mind just pushing us to Friday the 17th. I think it would be helpful to have a little more time so I can have meeting with my liaisons over at the CFB.

THE COURT: ,Sure that's fine. So we'll go from there. So I'll look forward to your reply by July 17.

Mr. Nampiaparampil, anything else you wanted to address today?

MS. NAMPIAPARAMPIL: Your Honor, if I can add one thing. This is Devi again.

THE COURT: Okay.

MS. NAMPIAPARAMPIL: Mr. Thayer's referring to *Buckley*, but in that case, the individual candidate had no contribution limits. They said that the candidate is allowed to spend an unlimited amount of money. But here, the candidate was restricted to $6,000. So it is different. That's inconsistent with *Buckley*. And as a result, we are having ongoing problems, all of us, in terms of legal counsel.

THE COURT: But I thought there was a $2,000 contribution limit. Right?

MS. NAMPIAPARAMPIL: That's for other donors. But the candidate has a $6,000 contribution limit. But in *Buckley* --

because --

THE COURT: I understand. Thank you for that clarification.

Okay. Anything else for today?

MR. THAYER: Nothing from defendant, your Honor. Thank you.

THE COURT: From the plaintiff?

MR. NAMPIAPARAMPIL: We are fine.

THE COURT: Okay. Thank you all. We are adjourned. Have a good day.

(Adjourned)